# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY PONCE SR., | Case No. 1:22-cv-00978-ADA-SAB-HC |
| Petitioner, | |
| | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| PATRICK COVELLO, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

## BACKGROUND

On November 19, 2018, Petitioner was convicted by a jury in the Tulare County Superior Court of rape of an intoxicated person and rape of an unconscious person. (1 CT[1] 270–71.) The trial court found true multiple enhancements, including eight prior prison term enhancements. People v. Ponce, No. F079083, 2021 WL 2154757, at *1 (Cal. Ct. App. May 27, 2021). Petitioner was sentenced to an imprisonment term of forty-four years to life. (2 CT 349.) On May 27, 2021, the California Court of Appeal, Fifth Appellate District modified the judgment "to strike the prior prison term enhancement allegations found true under section 667.5, former

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent. (ECF No. 21.)

subdivision (b)" and affirmed the judgment as so modified. <u>Ponce</u>, 2021 WL 2154757, at *13. On August 11, 2021, the California Supreme Court denied Petitioner's petition for review. (LDs[2] 10, 11.)

On August 5, 2022, Petitioner filed a petition for writ of habeas corpus raising the following claims for relief: (1) evidence (toxicology and crime scene reports) was unlawfully withheld from the trial court; (2) ineffective assistance of trial counsel for failure to present toxicology and crime scene reports and other exculpatory evidence at trial; (3) judicial misconduct for denying Petitioner time to hire competent attorney of his choosing, denying a <u>Marsden</u> motion, and denying defense counsel additional time to prepare Petitioner's defense; and (4) ineffective assistance of appellate counsel for failure to raise on appeal ineffective assistance of trial counsel and the issue of the toxicology and crime scene reports. (ECF No. 1 at 5–10.)[3]

On August 9, 2022, the Court ordered Petitioner to show cause why the petition should not be dismissed as unexhausted. (ECF No. 7.) Petitioner filed his response, (ECF No. 10), and the Court directed Petitioner to file a notice regarding how he would like to proceed, (ECF No. 11). As Petitioner did not file a notice, the Court issued findings and recommendation recommending that the petition for writ of habeas corpus be dismissed for failure to exhaust state judicial remedies on December 21, 2022.[4] (ECF No. 12.) On January 6, 2023, Petitioner filed a document, (ECF No. 13), which the Court construed as a motion to stay, (ECF No. 14 at 2). The Court vacated the findings and recommendations and granted a stay pursuant to <u>Rhines v. Weber</u>, 544 U.S. 269 (2005). (ECF No. 14 at 5.) On June 14, 2023, the Court lifted the stay. (ECF No. 17.) Respondent filed an answer. (ECF No. 22.) To date, no traverse has been filed, and the time for doing so has passed.

///

///

///

---

[2] "LD" refers to the documents lodged by Respondent. (ECF No. 21.)
[3] Page numbers refer to the ECF pagination stamped at the top of the page.
[4] The findings and recommendation was signed on December 20, 2022, but not docketed until December 21, 2022.

## II.

## STATEMENT OF FACTS[5]

In September 2017, Nicole was drinking at a park one afternoon with her boyfriend Jack, her sister Ashley, and friends. Nicole had started drinking earlier that morning before she got to the park. While at the park, Nicole continued drinking and took "shots." She felt drunk within an hour and started falling asleep. At trial, she testified she blacked out while at the park. She only recalled bits and pieces of the night. When Nicole "came to," it was completely dark outside and she and Jack were walking out of the park. She was "incredibly dizzy" and had trouble standing and walking. Nicole recalled stumbling and "just wanting to sit down." She blacked out again while walking. She remembered waking up the next morning around 7:00 a.m. in the backseat of a car she did not recognize in front of an In-N-Out Burger restaurant.[6] The bag Nicole had taken to the park was missing. She climbed out of the car and started walking home. Her body was aching. When she got home, she noticed she had dirt and leaves in her hair and all over her body.

At trial, Jack testified he and Nicole left the park when it was dark outside. They barely made it around the corner when Nicole laid down on the ground. Jack laid down next to her and they talked for about an hour. Then he made Nicole get up and they continued to walk; Nicole kept drinking while they walked. Nicole threw up and started "tumbling." Jack tried to pick up Nicole and carry her, but she would not get up. Nicole and Jack then saw defendant on a bicycle; Jack did not know defendant at the time. Defendant saw Jack was struggling, and he offered to help. According to Jack, defendant appeared to be a methamphetamine user and seemed to be under the influence. Jack estimated defendant was there for an hour or two hours before they split up. During that time, Jack sat with Nicole while she laid on the ground after throwing up. Jack told her he was going to leave if she did not get up, and Nicole started arguing with him. Jack reported to police Nicole then got up and hugged defendant saying, " 'I'm with him' "; Jack thought she knew defendant. Nicole then said she was going to leave; she got up and walked away, stumbling a bit. It was around 9:00 p.m. when Nicole walked away. At trial, Jack testified he left then too, and defendant followed him. Jack told defendant he did not know what to do with Nicole, and defendant said "she'll make it home." Jack bought some drugs from defendant and then separated from him. He did not see Nicole for the rest of the night. According to Jack, Nicole had her bag with her when he last saw her and she had no injuries.

The next morning, Nicole contacted Jack, her sister, and the friends she was with the night before. After speaking to them, Nicole became worried someone had taken advantage of her. She took a shower and noticed "tons of bruises" and she was bleeding from her vagina. When she got out of the shower, she told her mother she thought they should go to the doctor because she believed something might have happened to her the night before. They went to an urgent care center where a sexual assault response team (SART) exam was performed.

---

[5] The Court relies on the California Court of Appeal's May 27, 2021 opinion for this summary of the facts of the offense and procedural history. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

[6] At trial, the owner of the car Nicole woke up in testified he had left the car at a mechanic's shop near the In-N-Out Burger to be fixed because it would not start. He was contacted the day after dropping it off by the Visalia Police Department about an incident involving the car. He denied being in or around the car after leaving it with the mechanic the day before the incident.

Licensed registered nurse Heather McCoy conducted the sexual assault exam. She noted Nicole's wrists were bruised; Nicole had abrasions on her left and right legs; and she had abrasions and redness in her vagina. McCoy collected evidence swabs and took photographs. She testified the abrasions to Nicole's vagina were consistent with forcible penetration. Nicole still had leaves and dirt in her hair even after showering. Her arms and legs were bruised and scratched. She felt pain in her pelvic area. Nicole did not know defendant and did not recall ever meeting him.

Detective Jacob Sorenson was dispatched to the urgent care location regarding a possible rape investigation. During Detective Sorenson's investigation, defendant became a suspect. Sorenson interviewed Jack as part of his investigation. Jack reported to Sorenson defendant said he would take Nicole home that night, and Nicole then left with defendant. Sorenson contacted defendant, and defendant agreed to speak to him.

Defendant told Sorenson he saw Jack on the street that night with his girlfriend lying down next to him. Defendant asked if she was okay and said he was going to call an ambulance. He and Jack then sat and smoked marijuana together. According to defendant, Nicole was "coherent," "kinda talking," "she knew … what was going on." Defendant then left Jack and the girl there after about 30 minutes; he denied leaving with the girl. He also denied having sexual intercourse with the girl who was with Jack that night and stated there was no reason for his DNA to be inside her or inside the car where she woke up.

Sorenson then contacted Jack and Nicole and showed them photographic lineups that included defendant. Jack was unable to identify anyone but gave Sorenson another description. Nicole was also unable to identify anyone because of her lack of memory. Based on an investigative lead from the Department of Justice, Sorenson arrested defendant and obtained a DNA sample from him. He submitted that sample and a sample taken from Jack to the Department of Justice. Sorenson later received the results of the DNA testing.

Defendant's DNA sample was consistent with that of the minor male contributor to the sperm fraction of a vaginal swab taken from Nicole during the SART examination. Accordingly, defendant could not be eliminated as a contributor. The possibility of someone random having the same DNA profile as seen in the vaginal swab was approximately one in 3.6 quintillion African-Americans, one in 140 quintillion Caucasians, and one in 3.3 quintillion Hispanics.

Megan V. testified regarding a prior incident when defendant sexually assaulted her in 2013. She was 17 or 18 years old then and dated defendant for a few weeks. On February 2, 2013, she was lying down with him and he started to touch her and take off her clothes. She told him "no," but he continued. Megan kept telling him no; defendant punched her in the face four to five times. She tried to scream, but defendant covered her mouth. He pulled off her underwear and inserted his penis in her vagina twice. She kicked him in the chest and managed to crawl and then run away; she was nude from the waist down. She waved down a taxi that took her to a gas station where she called the police. She was given a sexual assault examination and she reported to the examiner and the police what happened that night. Her face was swollen from being punched and she had scrapes on her arms and legs from crawling away. She identified defendant at trial as the person who assaulted her.

Ponce, 2021 WL 2154757, at *1–2 (footnote in original).

4

# III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged convictions arise out of the Tulare County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition,

the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer,

538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fairminded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Court looks to the last reasoned state court decision as the basis for the state court judgment. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this Court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state courts reach a decision on the merits but there is no reasoned decision, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is

1    possible fairminded jurists could disagree that those arguments or theories are inconsistent with

2    the holding in a prior decision of [the Supreme] Court." <u>Richter</u>, 562 U.S. at 102.

3                                        **IV.**

4                              **REVIEW OF CLAIMS**

5        **A.  Ground One**

6        In Ground One, Petitioner asserts that there was a "lack of credible evidence" to support

7    his convictions. (ECF No. 1 at 5.) Petitioner also alleges that the toxicology and crime scene

8    reports that eliminated Petitioner as a suspect were withheld from the trial court.[7] (<u>Id.</u>)

9    Respondent argues that the California Court of Appeal reasonably rejected Petitioner's claim,

10   which the state court construed as attacking the sufficiency of the evidence. (ECF No. 22 at 10.)

11       To the extent Petitioner asserts a sufficiency of the evidence claim in Ground One, such a

12   claim was raised on direct appeal to the California Court of Appeal, which denied the claim in a

13   reasoned opinion. The claim was also raised in the California Supreme Court, which summarily

14   denied Petitioner's petition for review. As federal courts review the last reasoned state court

15   opinion, the Court will "look through" the California Supreme Court's summary denial and

16   examine the decision of the California Court of Appeal. <u>See</u> <u>Wilson</u>, 138 S. Ct. at 1192.

17       In denying the sufficiency the evidence claim, the California Court of Appeal stated:

18   **II. Evidence Was Sufficient to Establish Knowledge Element of Crimes**

19   Defendant next asserts the evidence was insufficient to establish the requisite
20   knowledge element of the crimes. We disagree.

21       **A. Standard of Review**

22   On appeal, the relevant inquiry governing a challenge to the sufficiency of the
     evidence " 'is whether, after viewing the evidence in the light most favorable to
23   the prosecution, *any* rational trier of fact could have found the essential elements
     of the crime beyond a reasonable doubt.' "(*People v. Nguyen* (2015) 61 Cal.4th
24   1015, 1055.) The reviewing court's task is to review the entire record in the light
     most favorable to the judgment to determine whether it contains substantial
25   evidence—evidence that is reasonable, credible, and of solid value such that a
     reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.

26

27   _____

28   [7] To the extent Petitioner asserts a claim in Ground One based on the alleged withholding of toxicology and crime
     scene reports from the trial court, the Court will address these allegations in section IV(B), *infra*, with respect to
     Petitioner's claim of ineffective assistance of trial counsel for failure to present the findings of the toxicology and
     crime scene reports at trial.

(*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

We "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis ... is there sufficient substantial evidence to support" ' the jury's verdict." (*Ibid.*)

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*Ibid.*)

" ' " '[A]lthough an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' "(*People v. Dalton* (2019) 7 Cal.5th 166, 209.)

### B. Applicable Law

Rape of an intoxicated person is defined as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator ... [¶] ... [¶] [w]here a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused." (§ 261, subd. (a)(3).) Accordingly, to be convicted of rape of an intoxicated person, the perpetrator must have known or reasonably should have known of the victim's condition that precluded consent. (*People v. Linwood* (2003) 105 Cal.App.4th 59, 71.)

Rape of an unconscious person is defined as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator ... [¶] ... [¶] [w]here a person is at the time unconscious of the nature of the act, and this is known to the accused." (§ 261, subd. (a)(4).) Accordingly, to commit rape of an unconscious person the perpetrator must know the victim is unconscious and the perpetrator must have the intent to have sexual intercourse with that person. (*People v. Dancy* (2002) 102 Cal.App.4th 21, 37.) The mental state requirement precludes conviction without proof that the perpetrator knew of the victim's unconsciousness. (*Id.* at p. 36.)

### C. Analysis

Defendant asserts there was not substantial evidence from which reasonable jurors could infer "(1) that Nicole was either unconscious or too intoxicated 'to exercis[e] the judgment required to decide whether to consent to intercourse' at the time she and [defendant] engaged in sexual relations ...; or (2) that [defendant]

both knew that Nicole was unconscious or too intoxicated to be capable of consenting and nevertheless acted with the wrongful intent of engaging in an act of sexual intercourse with her." (Fn. omitted.) He asserts a reasonable trier of fact could not infer beyond a reasonable doubt that Nicole was incapacitated when the act of penetration occurred or that defendant knew or reasonably should have known of her condition at that time. We disagree with defendant's contentions.

For a defendant to be convicted of a violation of section 261, subdivision (a)(3) the victim's level of intoxication must "be such that the victim is incapable of exercising the judgment required to decide whether to consent to intercourse." (*People v. Giardino* (2000) 82 Cal.App.4th 454, 464; accord, *People v. Lujano* (2017) 15 Cal.App.5th 187, 193.) Additionally, "[i]t is settled that a victim need not be totally and physically unconscious in order for [section 261, subdivision (a)(4),] defining rape as an act of sexual intercourse accomplished with a person who is at the time 'unconscious of the nature of the act[,]' to apply." (*People v. Ogunmala* (1987) 193 Cal.App.3d 274, 279.) Rather, section 261, subdivision (a)(4) uses the phrase "unconscious of the nature of the act" to mean "incapable of resisting because the victim [¶] ... [w]as unconscious or asleep ... [¶] [or w]as not aware, knowing, or cognizant that the act occurred." "One who is unconscious as defined in section 261, subdivision (a)(4), necessarily does not act freely and voluntarily with knowledge of the nature of the act." (*People v. Morales* (2013) 212 Cal.App.4th 583, 591.)

Here, substantial evidence supports the jury's conclusion defendant raped Nicole, who was "prevented from resisting" by an intoxicating substance and "unconscious of the nature of the act" as those phrases are used in section 261, subdivisions (a)(3) and (4). There was also sufficient evidence from which the jury could infer defendant knew of Nicole's condition when he engaged in sexual intercourse with her. Nicole testified she recalled being intoxicated, unable to walk straight, and stumbling the night of the rape. She lacked memory of most of the night after she left the park and denied awareness of the fact she and defendant had sex that night or the following day. She further testified she repeatedly "blacked out." Jack also testified Nicole kept lying down on the way home; she would not stand up to walk, she vomited, and she was stumbling. Additionally, defendant himself told police he saw Jack with a girl (Nicole) who was "laid out" and that defendant was going to call an ambulance after seeing her. He asked Jack, "[W]hat's up with her?" and if she was alright. Defendant explained he witnessed Jack trying to get her up. There was also evidence Nicole was bruised and scraped in the morning with leaves and dirt in her hair, and her vaginal examination reflected abrasions consistent with forcible penetration.

Such evidence and the reasonable inferences the jury could draw therefrom supports the jury's finding Nicole was incapable of resisting intercourse due to intoxication and lacked the requisite consciousness to consent when defendant had sex with her.[8] (See generally *People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1531, fn. 9 [noting victim's testimony she lost consciousness was sufficient evidence to support conclusion she was unconscious during at least some portion of rape].) It also supports the jury's inference defendant knew Nicole lacked

---

[8] Defendant argues *People v. Rogers* (2006) 39 Cal.4th 826 (*Rogers*) stands for the proposition that Nicole's lack of memory was insufficient to support an inference she was unconscious when the rape occurred. We conclude *Rogers* is inapplicable. In *Rogers*, the California Supreme Court held the trial court in a capital homicide prosecution was not required to instruct, sua sponte, on the defense of unconsciousness where no expert testified the defendant was unconscious during either of two killings, and defendant's professed inability to recall the events, standing alone, was insufficient to warrant an unconsciousness instruction. (*Id.* at pp. 887–888.)

sufficient consciousness or awareness to consent to intercourse, and he knew or should have known her level of intoxication prevented her from resisting intercourse. (See *People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1005 [substantial evidence, including victim's testimony she was intoxicated, had no memory of assault, and never consented to sex with defendant paired with defendant's statements, supported inferences drawn by jury that victim was unconscious and defendant knew it]; see generally *People v. Wader* (1993) 5 Cal.4th 610, 640 ["We draw all reasonable inferences in support of the judgment"].)

In so concluding, we reject defendant's contention it was not reasonable for the jury to infer Nicole's state of mind when defendant had intercourse with her because there was only evidence of her condition and defendant's impression of her when defendant initially met her. To the contrary, the totality of the evidence, and the reasonable inferences which could be drawn from it, amply supported the jury's verdict.

In support of his argument he was not aware of Nicole's intoxication or unconsciousness, defendant highlights other evidence, including his statement to police in which he denied the girl he saw with Jack was drunk, high on drugs, or otherwise overly intoxicated and stated instead that "she was coherent ... she knew what was going on." [w]e note, however, " '[w]e do not reweigh evidence or reevaluate a witness's credibility.' "(*People v. Scott* (2011) 52 Cal.4th 452, 487; accord, *People v. Hernandez, supra*, 200 Cal.App.4th at p. 1005 [declining invitation to reweigh evidence that victim was unconscious when defendant had sex with her].) Rather, we view the evidence in the light most favorable to the judgment and, accordingly, conclude the evidence supports defendant's convictions.

Ponce, 2021 WL 2154757, at *6–8 (footnote in original).

The Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 319).

"'After AEDPA, we apply the standards of Jackson with an additional layer of deference' to state court findings." Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011) (alteration

omitted) (quoting <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005)). As the Supreme Court has stated,

> <u>Jackson</u> . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

<u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011) (per curiam) (quoting <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010)).

On appeal, Petitioner argued "it was not reasonable for the jury to infer Nicole's state of mind when defendant had intercourse with her because there was only evidence of her condition and defendant's impression of her when defendant initially met her." <u>Ponce</u>, 2021 WL 2154757, at *8. In rejecting the claim, the California Court of Appeal cited to a California state case, which noted that the "victim's testimony she lost consciousness was sufficient evidence to support conclusion she was unconscious during at least some portion of rape." <u>Id.</u> (citing <u>People v. Ramirez</u>, 143 Cal. App. 4th 1512, 1531 n.9 (2006)). Thus, given Nicole's testimony, there was sufficient evidence to establish that Nicole was unconscious during at least some portion of the rape. <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Moreover, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution and presuming the jury resolved any conflicting inferences in favor of the prosecution, a rational trier of fact could have found true beyond a reasonable doubt that Petitioner knew or should have known of Nicole's intoxication or unconsciousness at the time of the offense. "In support of his argument he was not aware of Nicole's intoxication or unconsciousness, defendant highlight[ed] other evidence, including his statement to police in which he denied the girl he saw with Jack was drunk, high on drugs, or otherwise overly intoxicated and stated instead that 'she was coherent ... she knew what was going on.'" <u>Ponce</u>, 2021 WL 2154757, at *8. In light of the verdict, the jury clearly did not find

Petitioner's statements regarding Nicole being coherent to be credible, and a "jury's credibility determinations are . . . entitled to near-total deference under Jackson." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). "Although the evidence presented at trial could yield an alternative inference, we 'must respect the exclusive province of the [jury] to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts.'" Long v. Johnson, 736 F.3d 891, 896 (9th Cir. 2013) (quoting United States v. Archdale, 229 F.3d 861, 867 (9th Cir. 2000). "The jury in this case was convinced, and the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman, 566 U.S. at 656.

"When the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review," Cavazos, 565 U.S. at 7, the Court finds that the state court's decision denying Petitioner's sufficiency of evidence claim was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on this claim, and it should be denied.

**B.   Ineffective Assistance of Counsel**

In Ground Two, Petitioner asserts ineffective assistance of trial counsel for failing to present facts from the toxicology report and crime scene report at trial. (ECF No. 1 at 7.) In Ground Four, Petitioner asserts ineffective assistance of appellate counsel for failing to raise the issues of the toxicology report and crime scene report and trial counsel's ineffective assistance on appeal. (Id. at 10.)

1.   *Strickland* Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Id. at 687. First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the

Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. <u>Richter</u>, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." (citing <u>Strickland</u>, 466 U.S. at 690)). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 687. A reviewing court should make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." <u>Id.</u> at 689.

Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Strickland</u>, 466 U.S. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." <u>Richter</u>, 562 U.S. at 111–12 (citing <u>Strickland</u>, 466 U.S. at 696, 693). A reviewing court may review the prejudice prong first. <u>See</u> <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard." <u>Richter</u>, 562 U.S. at 101. Moreover, because <u>Strickland</u> articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Richter</u>, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in

order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 575 U.S. 312, 316–17 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 15 (2013)). When this "doubly deferential" judicial review applies, the inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

### 2.   Ineffective Assistance of Trial Counsel

Petitioner asserts that trial counsel was ineffective for failing to present evidence regarding the toxicology and crime scene reports at trial. (ECF No. 1 at 7.) Respondent argues that the state court reasonably denied a claim of ineffective assistance of trial counsel. (ECF No. 22 at 15.) This claim was raised in a state habeas petition filed in the Tulare County Superior Court, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's state habeas petition. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the Tulare County Superior Court. See Wilson, 138 S. Ct. at 1192.

In denying Petitioner's ineffective assistance of counsel claims, the Tulare County Superior Court stated:

> On the claim of ineffective assistance of counsel, the petition is denied. To prove ineffective assistance of counsel, the Petitioner must demonstrate that his attorney's performance was 1) deficient, in that [it] fell below an objective standard of reasonableness, and 2) that the attorney's deficient representation prejudiced the defendant to such a degree that there is a reasonable probability that, but for the attorney's failings, the Petitioner would have obtained a more favorable result. (Strickland v. Washington (1984) 466 U.S. 668.) The Petitioner has not submitted any affidavits from witnesses who were not called at the trial or presented any evidence other than his own self-serving allegations either that his attorney was inadequate. The declaration in support of trial counsel's motion to continue is insufficient to overcome the Strickland standards.

(ECF 21-13 at 2.)

AEDPA "restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1)." Murray v. Schriro, 745 F.3d 984, 998 (9th Cir. 2014). "AEDPA's 'backward-looking language requires an examination of the state-court decision at the time it was made. It [then logically] follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.'" Id. (alteration in original) (quoting Cullen v. Pinholster, 563 U.S. 170, 182 (2011)). "Federal courts

sitting in habeas may consider the entire state-court record, not merely those materials that were presented to state appellate courts." McDaniels v. Kirkland, 813 F.3d 770, 780 (9th Cir. 2015).

In his state habeas petitions filed in the Tulare County Superior Court and California Supreme Court, Petitioner included a copy of the toxicology report, which reflects that no alcohol or drugs were detected in the victim's system. (ECF No. 21-12 at 39; ECF No. 21-14 at 8.) A "Supplemental Narrative" for "Report for Incident 17-80870" was also attached and states that results from the victim's blood test indicate no alcohol or drugs were in her system but noted that the blood sample was drawn approximately seventeen hours after the reported event. (ECF No. 21-12 at 40; ECF No. 21-14 at 9.) A fingerprint comparison supplement was also attached and states that Petitioner was eliminated as a contributor of three prints lifted from the vehicle. (ECF No. 21-12 at 42; ECF No. 21-14 at 16.)

The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "When counsel focuses on some issues to the exclusion of others"—such as not arguing that the victim's drug tests came back negative and that Petitioner was eliminated as a contributor to the prints lifted from the vehicle—"there is a strong presumption that [counsel] did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The Supreme Court has recognized that this "presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" Id. (quoting Massaro v. United States, 538 U.S. 500, 505 (2003)).

Petitioner argues that the lack of fingerprints in the vehicle "eliminated [him] as a suspect," and thus, counsel was ineffective for failing to present evidence regarding the fingerprint analysis. (ECF No. 1 at 7.) However, a witness testified at trial that Petitioner was ///

eliminated as a contributor to the fingerprints lifted from the vehicle. (7 RT[9] 253.) Therefore, Petitioner does not demonstrate deficient performance or prejudice from counsel's failure to present such evidence. See Babbit v. Calderon, 151 F.3d 1170, 1174 (9th Cir. 1998) (holding that "it [i]s not unreasonable for counsel not to pursue . . . testimony when it [i]s largely cumulative" and citing Ninth Circuit precedent as holding that "defendant's counsel ha[s] no obligation to present cumulative evidence" (citing United States v. Schaflander, 743 F.2d 714, 719 (9th Cir. 1984)).

Petitioner also appears to argue that the toxicology report, which reflects that no drugs or alcohol were found in the victim's system around 5 p.m. the following day, supports an inference that the victim lied about her intoxication. However, Petitioner fails to present any evidence, such as affidavits from expert witnesses who would be willing to testify that the toxicology report indicates that the victim could not have been as intoxicated as the other evidence suggests. See Dows v. Wood, 211 F.3d 480, 486–87 (2000) (holding that the record supported the state courts' conclusion that petitioner failed to prove counsel was ineffective under Strickland because petitioner "provides no evidence that this witness would have provided helpful testimony for the defense-i.e., Dows has not presented an affidavit from this alleged witness").

"The law . . . does not permit us to second-guess the trial attorney's strategy. Instead, 'every effort [must] be made to eliminate the distorting effect of hindsight. We must therefore resist the temptation 'to conclude that a particular act or omission was unreasonable' simply because it 'proved unsuccessful' at trial." Daire v. Lattimore, 818 F.3d 454, 465 (9th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "[T]he relevant inquiry under Strickland is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." Atwood v. Ryan, 870 F.3d 1033, 1064 (9th Cir. 2017) (alteration in original) (internal quotation marks omitted) (quoting Siripongs v. Calderon, 133 F.3d 732, 736 (9th Cir. 1998)). Based on the foregoing, under AEDPA's "doubly deferential" review, Donald, 575 U.S. at 316, the Court finds that the state court's rejection of Petitioner's ineffective assistance of trial counsel claim was not contrary to, or an unreasonable application of, clearly established federal

---

[9] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent. (ECF No. 21.)

law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of trial counsel, and the claim should be denied.

### 3. Appellate Counsel

Petitioner asserts ineffective assistance of appellate counsel for failing to raise on appeal the issues of the toxicology report and crime scene report and trial counsel's ineffective assistance. (ECF No. 1 at 10.) Respondent argues that a fairminded jurist could agree with the state court's rejection of this claim. (ECF No. 22 at 21.) This claim was raised in a state habeas petition filed in the Tulare County Superior Court, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's state habeas petition. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the Tulare County Superior Court, which is set forth in section IV(B)(2), *supra*. See Wilson, 138 S. Ct. at 1192.

Appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751–52). As set forth in section IV(B)(2), *supra*, trial counsel's failure to present the crime report regarding the fingerprints did not constitute deficient performance or result in prejudice because an expert witness testified at trial that the fingerprints were not Petitioner's. Therefore, it was not objectively unreasonable for the state court to reject an ineffective assistance of appellate counsel claim for counsel's failure to raise this issue on appeal.

With respect to the toxicology report, appellate counsel explained to Petitioner in a letter the reason why he would not be raising claims regarding the toxicology report on appeal. Specifically, appellate counsel wrote in pertinent part:

The primary focus of my inquiry concerned the toxicology report that was not introduced into evidence. This report could only have made a difference to the outcome if supported by testimony from a toxicology expert willing to offer an opinion regarding Nicole's state of intoxication during the time period when intercourse allegedly occurred (roughly from 11 p.m. or so until 7 a.m. the next morning) based on the 0.0 result obtained at 5:00 p.m.

I have consulted a toxicologist who worked for the San Diego Coroner's Office for over 30 years. I asked her whether it is possible for a toxicology expert to calculate backwards from a 0.00 blood alcohol content (BAC) result obtained from a blood sample drawn at or shortly after 5 p.m. and he able to determine and offer an opinion regarding what that person's BAC would have been some 10-16 hours earlier. Her response: "A BAC of zero does not constitute a data point. You would have to have at least 0.016 or greater to be able to do a back-calculation. It is possible to make some estimate of max BAC if you had details of number of drinks, wt of drinker, timing of drinks, etc."

. . .

The toxicologist provided this response: "OK, If she had 5 shots of vodka during a 6 hour period (9-3) at 3:00 her BAC would be around 0.14. This.is where it get [sic] fuzzy, If she had another 5 shots between then (3:00pm) and 9 pm, at 9:00 she would be at about 0.28, which is pretty drunk. If she stopped drinking then, she should be back to 0.00 after about 19 hours, which would be 4:00pm the next day. These are all estimates of course, but most toxicology experts would come up with similar numbers. It's hard to know how many shot equivalents she drank from a bottle. For example, if she had a total of 12 shots and stopped drinking at 9:00 pm she would be much higher, about 0.38, and it would take 25 hours to get back to zero, which would be later than 5:00 pm the next day, so that seems unlikely. . . ."

In light of these responses, I have concluded that I cannot make a viable argument that [trial counsel] was ineffective for not further investigating the information in the toxicology report at trial and introducing it at trial. Without the ability to demonstrate that his omission regarding this evidence would have made a difference by providing strong evidence Nicole could not have been as intoxicated as the other evidence suggests, such an issue would have no chance of succeeding.

(ECF No. 1 at 77–79.) Based on the foregoing, it was not objectively unreasonable for the state court to reject an ineffective assistance of appellate counsel claim for counsel's failure to raise the toxicology report issue on appeal.

Under AEDPA's "doubly deferential" review, Donald, 575 U.S. at 316, the Court finds that the state court's rejection of Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of appellate counsel, and the claim should be denied.

### C.  Denial of Continuance

In Ground Three, Petitioner asserts that the trial judge abused his discretion in denying a continuance to allow Petitioner to retain a new attorney. (ECF No. 1 at 8.) Respondent argues that a fairminded jurist could agree with the state court's rejection of this claim. (ECF No. 22 at 17.) This claim was raised on direct appeal to the California Court of Appeal, which denied the claim in a reasoned opinion. The claim was also raised in the California Supreme Court, which summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. <u>See</u> <u>Wilson</u>, 138 S. Ct. at 1192.

**I. The Court Did Not Prejudicially Err in Denying Defendant's Request for a Continuance to Allow Him to Retain Counsel**

Defendant first argues the court reversibly erred in denying his request for a continuance to permit him to retain counsel made a week before trial.

**A. Relevant Procedural History**

The court's minute orders reflect defendant was arraigned on December 11, 2017. The matter was then set for a preliminary hearing setting on January 12, 2018, but that setting was continued by counsel for defendant. A preliminary hearing setting was also continued by counsel for defendant on February 13, 2018, and March 6, 2018. A preliminary hearing was then set and proceeded on April 11, 2018.

The court initially scheduled a jury trial setting for May 25, 2018. For reasons undisclosed by the record, trial did not proceed at that time. At the end of July 2018, defense counsel moved for a continuance based on his lack of time to investigate and research all the potential issues and defenses in the case because he had been working on a capital case. The parties reconvened in court on August 3, 2018. At that hearing, the court noted defendant's trial was scheduled for the following Tuesday "on a no-time waiver." Defense counsel asked the court to reset the trial about 90 days later and explained defendant agreed with the request and had asked him to do various things in preparation for trial. The People did not object to the request for a continuance and the court granted the motion. Defendant waived time and the court reset the trial to November 13, 2018.

The parties reconvened in court on November 6, 2018, to address the motions in limine. The court also held a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to address defendant's request to discharge his lawyer. Defendant asserted his counsel was not consulting with him and defendant was "oblivious to what is happening here." Defendant reported he requested the

toxicology reports and updates generally but received nothing. He stated he was trying to clarify the strike allegations and he spoke to his counsel regarding a prior conviction that was reversed, but he did not feel he was being heard. Defendant expressed he did not believe he would receive a fair trial with his assigned counsel's representation.

Defense counsel responded he would be filing a motion to strike defendant's prior strike convictions as defendant requested but, based on the circumstances of the prior charges, he believed it was unlikely to be granted. He also explained why he did not seek certain evidence, such as the lack of defendant's fingerprints on the car and noted there had been no plea offers by the district attorney's office.

The court concluded it did not believe there was a sufficient breakdown in the relationship to merit removal of defense counsel. Accordingly, it denied the *Marsden* motion.

Immediately thereafter and before the hearing concluded, defendant said, "[J]ust one last thing. Is it possible .... I would like to hire an attorney. No offense. I've spoke to him about it. Can I please have some time for that?" The court responded, "No. You're going to trial Tuesday."

### B. Standard of Review

A continuance may only be granted for good cause, and trial courts have broad discretion to determine whether good cause exists. (§ 1050, subd. (e); *People v. Alexander* (2010) 49 Cal.4th 846, 934.) We review an order denying a motion to continue for an abuse of discretion. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.)

Defendant bears the burden of establishing an abuse of judicial discretion in the denial of his request for a continuance to secure new counsel. (*People v. Jeffers* (1987) 188 Cal.App.3d 840, 850; *People v. Rhines* (1982) 131 Cal.App.3d 498, 506; accord, *People v. Beames* (2007) 40 Cal.4th 907, 920.) "Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*People v. Beames, supra,* at p. 920.) In determining whether the denial was so arbitrary as to violate due process, we look to the circumstances of each case, particularly the reasons presented to the court at the time the request was denied. (*People v. Courts* (1985) 37 Cal.3d 784, 791 (*Courts*); *People v. Jeffers, supra,* at p. 850.)

### C. Applicable Law

"The right to the effective assistance of counsel 'encompasses the right to retain counsel of one's own choosing. [Citations.]' [Citation.] Underlying this right is the premise that 'chosen representation is the preferred representation. Defendant's confidence in his lawyer is vital to his defense. His right to decide for himself who best can conduct the case must be respected wherever feasible.' [Citation.]" (*Courts, supra,* 37 Cal.3d at p. 789.) " '[T]he state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources.' " (*Courts, supra,* at p. 790; see *People v. Crovedi* (1966) 65 Cal.2d 199, 208.) And the right to counsel of one's choosing " 'can constitutionally be forced to yield *only* when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under

the circumstances of the particular case.' "(*Courts, supra*, at p. 790; see *People v. Crovedi, supra*, at p. 208.)

" 'A necessary corollary [of the right to appear and defend with counsel of his own choosing] is that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth. [Citations.]' [Citations.] In addition, counsel, 'once retained, [must be] given a reasonable time in which to prepare the defense.' [Citation.] Failure to respect these rights constitutes a denial of due process. [Citations.]" (*Courts, supra*, 37 Cal.3d at p. 790.)

While due process secures a defendant's right to appear with retained counsel of choice, this right is not absolute, and the court may exercise discretion to ensure orderly and expeditious judicial administration if the defendant is unjustifiably dilatory or arbitrarily desires to substitute counsel at the time of trial. (*People v. Leonard* (2000) 78 Cal.App.4th 776, 784; *People v. Jeffers, supra*, 188 Cal.App.3d at p. 850.) A good faith, reasonable effort to retain private counsel must be "sharply contrasted with cases which have upheld the denial of a continuance on the ground that participation by a particular private attorney was still quite speculative at the time the motion for continuance was made." (*Courts, supra*, 37 Cal.3d at p. 791, fn. 3.)

### D. Analysis

Defendant argues the trial court's response to his request for time to retain counsel communicated to him "it would be futile for him to seek to hire an attorney in the week remaining before trial was scheduled to begin," effectively deterring him from seeking new counsel. He asserts the record does not establish permitting him time to retain counsel would have caused "him 'significant prejudice.' " He also argues, regardless of whether the court abused its discretion in refusing his request for additional time, its holding infringed on defendant's rights to counsel of his choice and due process "by preemptively squelching any hope he might have entertained of securing a reasonable continuance in the event he was able to retain counsel prior to the pending trial date." He asserts his expressed dissatisfaction with his attorney during the *Marsden* hearing was sufficient to justify his request for time to find a replacement. He relies on *People v. Stevens* (1984) 156 Cal.App.3d 1119 (*Stevens*) in support of his contentions and asserts per se reversal is required based on the deprivation of his right to counsel. The People respond that defendant was unjustifiably dilatory in seeking to substitute counsel a week before trial, distinguishing *Courts, supra*, 37 Cal.3d 784. They argue defendant's request for a continuance was not based on good cause. We cannot conclude the court abused its discretion in denying defendant's motion for a continuance made days before trial.

In *Courts, supra*, 37 Cal.3d 784, the Supreme Court held the trial court abused its discretion in denying the defendant's motion for continuance where the defendant engaged in a good faith, diligent effort to obtain the substitution of counsel *before* the scheduled trial date. (*Id.* at pp. 791, 794–796.) The Supreme Court explained the defendant had informed the trial court of his intention to be represented by private counsel weeks before trial was to begin (*id.* at pp. 791–792) and had successfully retained new counsel a week before trial, rather than at the last minute (*id.* at p. 794). Thus, " '[there] was neither lack of diligence in seeking a replacement [for appointed counsel] nor undue delay in apprising the court of the situation and seeking [a] continuance.' [Citation.]" (*Ibid.*) There were also no

circumstances warranting a limitation of the defendant's right to counsel based on considerations of judicial efficiency. (*Ibid.*)

In contrast, here the court was "confronted with the 'uncertainties and contingencies' of an accused who simply wanted a continuance to *obtain* private counsel." (*Courts, supra*, 37 Cal.3d at p. 791.) There was no evidence defendant had made any efforts toward retaining counsel or securing funds to do so. (See *People v. Pigage* (2003) 112 Cal.App.4th 1359, 1367 [no abuse of discretion to deny defendant's request for continuance to seek private counsel after *Marsden* motion was denied where there was "no evidence defendant attempted to retain counsel, or had even taken steps to secure funds to hire private counsel, although his problems with appointed counsel apparently began" over a week earlier].) Thus, defendant's continuance request was premised on his "representation that he would *eventually* be able to hire counsel of his own choosing." (*Courts, supra*, at p. 791, fn. 3.) Additionally, the court had no information regarding when defendant would actually obtain counsel and how long before that person would be able to proceed with trial. (See § 1050, subd. (i) [continuances granted only for period of time evidence shows is necessary].) Notably, the court had granted appointed counsel 90 additional days to prepare for the trial; thus, a similarly lengthy continuance could be reasonably expected once retained counsel had actually been secured. Defendant also did not explain why he had not begun such efforts before that time, given that his dissatisfaction with his counsel had clearly arisen at an earlier point. Nor has defendant established he was prejudiced by the denial of the request for a continuance; that is, there is no evidence he would have been able to afford and retain counsel if a continuance had been granted. (*See People v. Fudge* (1994) 7 Cal.4th 1075, 1105 [absent a showing of an abuse of discretion or prejudice to the defendant, " ' "a denial of his motion for a continuance cannot result in a reversal of a judgment of conviction" ' "].) On this record, we cannot conclude defendant has met his burden of establishing the trial court abused its broad discretion when it declined to continue the trial date. (*Courts, supra*, 37 Cal.3d at pp. 790–791; *People v. Jeffers, supra*, 188 Cal.App.3d at pp. 850–851 [request for continuance made on day of trial properly denied where defendant failed to present trial court with "compelling circumstances" justifying request].)

*Stevens, supra*, 156 Cal.App.3d 1119, upon which defendant relies in support of his argument, does not persuade us otherwise. In *Stevens*, the court held "a defendant's interest in discharging a *retained* attorney is included within the right to counsel of one's choice, and is subject to the same limitations." (*Id.* at p. 1127, italics added.) Accordingly, the *Stevens* court concluded the trial court erred in employing a *Marsden* analysis in denying the defendant's request to discharge his retained counsel, a brother-in-law who had volunteered to represent him for free. (*Id.* at pp. 1126–1127.) Because counsel was not court appointed, the defendant could discharge him without cause. (*Id.* at pp. 1127–1128.) In addition, because the defendant was indigent, the court could not deny him appointed counsel upon request. (*Id.* at p. 1127.) Thus, the appellate court held it was error to deny the defendant's request for a continuance to be represented by the public defender a week before trial, noting the trial court had an "absolute duty to appoint counsel if [the defendant] was unrepresented." (*Stevens, supra*, at pp. 1121, 1126–1127.)

Unlike in *Stevens*, here defendant did not have the same right to discharge appointed counsel, who the trial court concluded was providing adequate representation—a decision defendant does not challenge on appeal. (*People v. Ortiz* (1990) 51 Cal.3d 975, 983–984 [in contrast to cases involving appointed counsel, a criminal defendant generally has the right to discharge retained counsel

"with or without cause"].) Thus, the court was not presented with a situation where defendant would be unrepresented if the court did not permit him a continuance to obtain new counsel. And here, unlike in *Stevens* where the defendant was seeking appointed counsel, if and when defendant could actually find and retain counsel was entirely speculative when he requested the continuance. Thus, *Stevens* is inapposite.

Rather, finding no abuse of discretion, we reject defendant's contention.

Ponce, 2021 WL 2154757, at *3–6 .

The Supreme Court has held that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris v. Slappy, 461 U.S. 1, 11–12 (1983) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar, 376 U.S. at 589. Here, the trial court had just determined that there was not a breakdown in the relationship between Petitioner and defense counsel that would warrant removal of counsel. Despite Petitioner's unhappiness with counsel's legal strategy, there was no indication that defense counsel was unprepared or unable to proceed with trial. Petitioner's  request for a continuance to retain counsel occurred one week before the trial was scheduled, and Petitioner's ability to secure retained counsel was wholly speculative.

Given the "broad standard" for "determining whether a continuance violates due process," in addition to "the deference owed under AEDPA, the circumstances here do not render the [state court]'s decision that the denial of the continuance was not a due process violation unreasonable." Michaels v. Davis, 51 F.4th 904, 944 (9th Cir. 2022). See Houston v. Schomig, 533 F.3d 1076, 1079 (9th Cir. 2008) (finding record supported state court's determination that trial judge acted within his broad discretion in denying continuance given that current counsel was able to proceed to trial, petitioner was not diligent in retaining private counsel, request occurred four  days before trial was scheduled, and "the motion to continue was based on [petitioner]'s desire to retain counsel because he was unsatisfied with his public

defender's preparation for trial"). The Court finds that the state court's rejection of Petitioner's claim regarding the denial of a continuance was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for his third claim for relief, and it should be denied.

## V.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **December 4, 2023**

UNITED STATES MAGISTRATE JUDGE